```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
Z-INTERNATIONAL, INC.,                           :
                                                 :
                    Plaintiff,                   :   02 Civ. 8646 (HB)
                                                 :
        -against-                                :   **OPINION & ORDER**
                                                 :
Z LINE INTERNATIONAL, INC., and                  :
EPHRAIM YUROWITZ,                                :
                                                 :
                    Defendants.                  :
------------------------------------------------------------------------x
```
**Hon. HAROLD BAER, JR., District Judge:**

Before the Court are two contempt motions that stem from a Judgment and Order issued from this Court. For the reasons stated below, both Motions are GRANTED.

**I.      BACKGROUND**

On October 29, 2002, Plaintiff Z-International, Inc. ("Z-International"), filed a Summons and Complaint against Defendants Z Line International, Inc. ("Z Line") and Ephraim Yurowitz ("Yurowitz")(collectively the "Defendants") for trademark infringement of the "Z-Line" mark on various school and office supplies. The Defendants failed to answer the Complaint and a Default Judgment was entered on April 11, 2003 ("Default Judgment"). On October 24, 2003, Plaintiff filed a contempt motion based upon the Defendants' failure to comply with the Default Judgment. At that point the parties came together in my chambers and after much discussion entered into settlement negotiations. Eventually I issued a Post-Mediation Order of Discontinuance ("Post-Mediation Order") on March 24, 2004 that provided: (i) Defendants pay Plaintiff the sum of $10,000 over a period of one year in monthly and equal installments of $833.33 starting April 1, 2004; (ii) those monthly payments were subject to an acceleration clause; (iii) Defendants execute a Confession of Judgment for the full $10,000; (iv) that Plaintiff receive one-time access to Defendants' books and records; and (v) any violation of the agreed upon injunction prohibiting the use of Plaintiff's mark (Z-Line) or confusingly similar marks articulated in the Default Judgment might result in further sanctions for contempt.

1

The $10,000 sum was reached because Defendant Yurowitz claimed that neither he nor his company had any money and the access to the books and records was included to confirm that fact.

The Defendants paid the first installment of $833.33, but failed to pay the remaining installments as they became due, failed to execute a Confession of Judgment for the full $10,000, and also failed to allow Plaintiff access to Defendants' books and records. As a consequence, a Judgment was entered on the Post-Mediation Order on July 21, 2004. The Judgment provided that: (i) Defendants pay to Plaintiff the sum of $9,166.67; and (ii) that Defendants allow the Plaintiff a one-time access to Defendants' books and records for inspection, no later than August 13, 2004. Defendants did pay Plaintiff the sum of $9,166.67 and Plaintiff provided a Satisfaction of Judgment which was docketed on February 16, 2005.

Plaintiff hired Elan Ben-Avi ("Ben-Avi"), a financial consultant with the firm of Getzler Henrich & Associates LLC, to conduct an inspection of Defendants' books and records. (Ben-Avi Aff. at ¶¶ 1, 4.) Ben-Avi contacted Yurowitz and the parties agreed to an extension of time to conduct the inspection on August 24, 2004. (Ben-Avi Aff. at ¶ 8.) On August 23, 2004 Ben-Avi sent a list of documents for Defendants to produce during the inspection that included personal and business tax returns, bank statements, cleared checks, group structure of all business entities for which Defendants have an interest, etc. (Ben-Avi Aff. at ¶ 9.) The inspection did not take place until November 18, 2004 at the offices of Defendants' counsel during which the only documents Defendants produced were bank statements for three business checking accounts. (Ben-Avi Aff. at ¶ 19.) Yurowitz claims that these are the only documents he had that pertain to the business.

On December 19, 2004, Plaintiff's counsel, Roberto L. Gomez, purchased school supplies at Duane Reade and at National Wholesale Liquidators ("NWL") which bear the name "COLOR ART BY Z Line" and the notice "Made in China for Z Line HK Monsey, N.Y. 10952." (Gomez Decl. at ¶¶ 19, 20, Ex. O, P, Q, R.) Counsel for NWL advised Plaintiff that NWL purchased the school supplies bearing the name "COLOR ART BY Z Line" from Defendant Z Line. (Gomez Decl. at ¶ 21, Ex. S.) Subsequently, Plaintiff filed two contempt motions. The first motion, based upon Defendants' violations of the

2

injunction, was served by mail on Defendants' counsel on February 4, 2005. The second motion, based upon Defendants' failure to follow the Court's orders regarding the inspection of their books and records was validly served on Yurowitz' wife, as agent of the corporation and co-resident with Yurowitz, at his home on March 4, 2005.

On February 18, 2005, this Court allowed Defendants' counsel to withdraw and the Court instructed Yurowitz to obtain new counsel. Instead of securing counsel, Yurowitz submitted several letters to the Court that requested a conference and claimed that because of financial problems, Yurowitz could not afford an attorney so he would answer the contempt motions himself. (Yurowitz Letters dated March 9, 22, 31, and April 4, 2005.) The letters also stated that it was his manufacturers fault that some of the products still contained the Z Line logo, which in any case he did not believe would cause confusion with the Z-Line logo. He also argued that no products now manufactured would bear the Z-Line logo.

On May 10, 2005 the Court sent a letter to Yurowitz to inform him that although he as an individual could proceed pro se, his corporation, Z Line International, also a named defendant in this suit, could not. The Court declined to hold a conference but gave Yurowitz additional time, until June 10, 2005, to secure counsel on behalf of his company to oppose the contempt motions or be subject to default. On June 1, 2005 the Court received another letter from Yurowitz that claimed he was unable to secure counsel for his company and again asked the Court to allow him to appear on its behalf. On June 7, 2005 the Court responded by letter and again instructed Yurowitz that if he did not obtain counsel a default judgment would be entered against his company and based on all the papers received, it was likely the motions for contempt would be granted against him personally. On June 10, 2005 the Court received a letter from Yurowitz that stated he had not secured counsel and stood by his prior letters to describe his own defense to the contempt motions.

## II. DISCUSSION
### A. Z Line Default

It is generally accepted that a corporation cannot appear or be permitted to conduct litigation unless represented by counsel because they are artificial entities that can only act

3

through licensed agents.  See Rowland v. California Men's Colony, Unit II Men's Advisory, 506 U.S. 194, 201 (1993).  Failure to secure counsel will subject defendants to a default judgment against it.  Dow Chemical Pacific, Ltd. v. Rascator Maritime, S.A., 782 F.2d 329, 336 (2d Cir. 1986)(holding that where a corporation fails to comply with the court's direction to secure counsel, entry of default against the party is appropriate).

Yurowitz argues that there are exceptions to this rule when, as here, the corporation shares its identity with its sole shareholder, but unfortunately none apply in this situation.  His company is not in bankruptcy court and financial disability is not a recognized excuse in civil litigation.  See, e.g., Brown v. Beyer, Inc. et al., 1998 U.S. Dist. LEXIS 19556 (S.D.N.Y. Dec. 11, 1998)(The magistrate judge recommended a default judgment be entered against a defendant who claimed he could not secure counsel because he lacked the money.).  To date Yurowitz has not retained counsel to represent his company and oppose the contempt motions so it is proper and I am constrained to find Z Line International, Inc. in default on both contempt motions.

### B.  Contempt Motions

Because Yurowitz is also a named defendant in this suit the Court will analyze his defenses to the contempt motions through his letters as an individual.

Civil contempt is designed to coerce a reluctant party to obey a court's directive.  See King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995).  In order to prevail on a contempt motion, the Plaintiff must establish that; (1) the Order the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted compliance in a reasonable manner.  Id. at 1058.

#### i.      Non-Compliance With the Injunction

Plaintiff has filed two motions for contempt of this Court's Post-Mediation Order and subsequent Judgment.  The first contends that Defendants did not comply with the permanent injunction of Plaintiff's trademark.  The injunctive language in the Default Judgment was plain and unambiguous and there is every indication that Defendants understood its parameters.  Examination of the supplies purchased by Plaintiff only recently

4

from Duane Reade and NWL, it is beyond peradventure that this Defendant has continued to utilize the words "Z Line" and that the mark is identical to the "Z Line" mark that was the subject of the original Complaint. Because the packaging also contains Defendants' address along with the affirmations from Duane Reade and NWL it cannot be disputed that the school and office supplies are the Defendants' products and the Defendants clearly continue to infringe upon Plaintiff's trademark. Finally, Defendants have not diligently attempted to comply in a reasonable manner. In fact, the Defendants have merely added the words "COLOR ART" to their mark and have not attempted to obey the injunction. See Oral B Lab., Inc. v. Mi-Lor Corp., 810 F.2d 20, 24 (2d Cir. 1987)(infringer has a duty "to keep a safe distance from the line drawn by the district court's injunction"). Defendants have not attempted a safe distance and Yurowitz's argument that he asked and Plaintiff had no objection to the "COLOR ART" logo is unavailing. Plaintiff contends that while Yurowitz did mention he was going to change his logo to "COLOR ART" at the March 24, 2004 Court conference, he did not mention that he would also use "BY Z Line." If he had, Plaintiff would have certainly objected because this is the identical mark to the one that was the subject of the Complaint.

### ii. Non-Compliance With the Inspection of Books and Records

Plaintiff's second motion regards the Post-Mediation Order that Defendants make the "books and records" of their finances available for a one-time inspection to determine their assets. The language in the Post-Mediation Order was clear and unambiguous and drafted during the settlement negotiations by all parties. It stated that "Access to books and records at π's expense at a mutually convenient time and place on one occasion." This order for access was also restated in the subsequent Judgment after Defendants failed to pay or allow for the inspection to take place.

When what can only be described as a half-hearted inspection took place, Defendant's counsel produced only bank statements for three accounts (a primary account for Yurowitz, and business checking accounts for Z Line and Shefa Trans Pacific Holding Corp.). Yurowitz claims that these accounts are all that exist, but does not explain the absence of personal and business tax returns, cleared checks, group structure of all business entities for which Defendants have an interest, or any other financial records requested by

Plaintiff. It is also clear that Defendants did not attempt to comply with my Order in a reasonable manner but made excuse after excuse as evidenced by delays and lack of cooperation with regard to the list of documents that Plaintiff requested.

As such, Defendants are in civil contempt for violation of the Post-Mediation Order and Judgment. The Court finds that the civil contempt was willful, and that Z-International was prejudiced and damaged and continues to be prejudiced and damaged by Defendants' contempt.

### iii.     Sanctions for Contempt

The purpose of civil contempt is coercive and compensatory rather than punitive. See Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995); Benjamin v. Malcolm, 156 F.R.D. 561, 566 (S.D.N.Y. 1994)("Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damage sustained by reason of noncompliance")(quoting McComb v. Jacksonville Paper co., 336 U.S. 187, 191 (1949). As such the Court has broad discretion to fashion a remedy that will bring a defendant into compliance and compensate the party for its losses. Perfect Fit Indus., Inc. v. Acme Quilting Co., 673 F.2d 53, 57 (2d Cir. 1982). Before imposing sanctions on a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard. Sterling Nat'l Bank v. A-1 Hotels Int'l, 2004 U.S. Dist. LEXIS 11566 at *7-8 (S.D.N.Y. June 23, 2004). Both of these motions, of course, gave Yurowitz notice and an opportunity to be heard, and he failed to avail himself of these rights. Moreover, the Court gave Yurowitz additional time to respond and several warnings about the possibility of contempt and he chose also to ignore those warnings. As such the Court will impose the following sanctions:

The Defendants shall deliver up to Z-International for destruction all labels, signs, letterhead, brochures, prints, packages, advertisements, promotional materials and other printed materials in the possession of Defendants incorporating the mark "COLOR ART BY Z Line" (hereafter the "COLOR ART BY Z Line" mark) or any reproduction or copy thereof, and all molds, plates, matrices, or other means of making the same.

Defendants, their officers, agents, servants, affiliates, employees, attorneys, and representatives, and all those in privity or acting in concert or participation with Defendants are forthwith permanently enjoined and restrained from using the mark "COLOR ART BY Z Line" or any mark similar thereto, whether alone or in connection with the promotion, advertising, marketing or sale of school and office supplies.

Defendants shall notify their customers (present customers and any customers over the preceding two calendar years) within fifteen days from the date hereof: (1) Plaintiff has rights to and ownership of Z-International's Z-LINE® mark (which is the subject of U.S. trademark Registration No. 2,393,066) with regard to school and office supplies; (2) Defendants will no longer use the "COLOR ART BY Z Line" mark; (3) Defendants' "COLOR ART BY Z Line" mark or any marks similar thereto are in no way related to or affiliated with Z-International; and (4) Defendants, their officers, agents, servants, affiliates, employees, attorneys, and representatives, and all those in privity or acting in concert or participation with Defendants have been enjoined from using said "COLOR ART BY Z Line" mark or any mark similar thereto in connection with the promotion, advertising, marketing or sale of school and office supplies.

Defendants are instructed to provide Plaintiff with a copy of each and every notice that Defendants send to their customers (present customers and any customers over the preceding two calendar years) pursuant to the foregoing paragraph.

Finally, Defendants shall provide Plaintiff with an accounting of their profits from sales of all office and school supply products incorporating the "COLOR ART BY Z Line" mark. Defendants are directed to provide access to Z-International and/or its attorneys, agents, or representatives, to all of Defendants' books and records that relate to Defendants' finances from October 2002 to the present so that Z-International may conduct, at Defendants' expense, an examination of said books and records ("Inspection"), and to ensure compliance with the notice provisions of this Order.

If Defendants have not provided the accounting and inspection called for herein by July 26, 2005, Plaintiff may consult with the U.S. Marshal, and secure the service of a deputy U.S. Marshal to enter Defendants' premises, or any premises in his control, to obtain the financial records called for in the Plaintiff's document list sent on August 23, 2004.

(Ben-Avi Decl, ¶ 9, Exhibit B.) Once the Inspection has been completed, Plaintiff may ask this Court for additional relief including a disgorgement of profits from the foregoing sales of all office and school supply products incorporating the "COLOR ART BY Z Line" mark.

Z-International, is awarded the sum of $3,679.50, as compensatory sanctions for Defendants' contempt, costs, attorneys fees, and other expenses incurred by Z-International relating to Z-International's efforts to secure Defendants' compliance with the requirements of the Post-Mediation Order and Judgment.

### III. CONCLUSION

For the foregoing reasons, the motions for contempt are GRANTED. The Clerk of the Court is instructed to close this motion and any open motions and remove this case from my docket.

**IT IS SO ORDERED.**
New York, New York
July _6_, 2005

_____
U.S.D.J.